Brydon H. Nicoll, Appellant, *v.* J. Carroll McCaffrey and Eugenie M. McCaffrey, Defendants below; and Jules Junker, and Jules Junker, Administrator c. t. a. of John Junker, deceased, Garnishees and Appellees.

*Foreign attachment—Practice, C. P.—Rule to quash—Cause of action.*

It is well settled practice on a rule to show cause of action, that the plaintiff should read his affidavit, and if that affidavit is sufficient, the attachment will be allowed to stand. Counter affidavits tending to contradict the plaintiff, or setting up a defense to the action, are not read on the hearing of such rule, for the reason that it would tend, in practice, to a trial of the case by the court in advance. The right of the plaintiff to maintain an action under all the evidence cannot be disposed of in this summary manner.

*Practice, C. P.—Order dissolving foreign attachment—Presumption of regularity.*

On an appeal from an order dissolving an attachment on a rule to show cause of action, standing alone, and the proceedings being otherwise regular, it is to be presumed that the court based its action solely on the insufficiency of the affidavit of cause of action. On the hearing of such rule nothing else could properly enter into the adjudication, and therefore it is to be presumed that nothing else did. It is a decision upon a question of law, which appears on the record, and is, therefore, reviewable.

*Foreign attachment—Rule to quash—Facts dehors the record.*

It is now too well settled by precedent to permit discussion that the court has power to quash a writ of foreign attachment upon proof of facts

which are not disclosed by the record, as, for example, that the defendant is a resident of the state, or that the property is not liable to foreign attachment. It seems equally well settled that where a court of record may quash or dissolve on extrinsic evidence which cannot be put on the record, the presumption is that everything was done rightly and according to law.

*What constitutes a record—Agreement of counsel filed as a record.*

Not every paper that is filed, although filed by order of the judge, is a part of the record, for purpose of review.

An agreement signed by the respective counsel and filed as of record where facts are agreed upon and admitted by counsel, for the purpose of the argument, does not become part of the record, where it does not appear, by the record, that the facts agreed upon were admitted to the record by the consent of the court or that they were the only facts which were before the court.

Depositions and affidavits read upon the hearing of a rule to quash a writ of foreign attachment are not part of the record, and it follows that an agreement of counsel as to facts, manifestly made to take the place of depositions, does not become a part of the record, although filed.

Argued Dec. 16, 1895. Appeal No. 25, Nov. T., 1895, by plaintiff, from order of C. P. No. 3, Phila. Co., March T., 1895, No. 57, making absolute rules entered by the garnishees to show cause of action and why an attachment should not be dissolved, and also why attachment should not be quashed. Before RICE, P. J., WILLARD, BEAVER, REEDER, WICKHAM, McCARTHY and ORLADY, JJ. Affirmed.

Assumpsit by plaintiff on joint promissory note of J. Carroll McCaffrey and Eugenie M. McCaffrey for $500. Action commenced by summons against J. Carroll McCaffrey and by foreign attachment against Eugenie M. McCaffrey.

Under the attachment the sheriff returned that he had attached "the goods, chattels, lands and tenements, moneys, credits, legacies and interests, etc., in possession, etc., of Jules Junker, administrator, etc." June 1, 1895, garnishees entered the rule on the plaintiff to show cause of action and why the attachment should not be dissolved, in answer to which the plaintiff, on June 22, 1895, filed his affidavit setting forth his cause of action on which this attachment was based. On June 24, 1895, the garnishees filed an affidavit setting forth "that Eugenie M. McCaffrey was a married woman on or before the twenty-second day of September, 1890, the date of the note on which the plaintiff's claim is based, having been mar-

ried to the other defendant, J. Carroll McCaffrey, on November 27th, 1880; and that she was a married woman at the time of the death of her father, John Junker (May 18th, 1893), in whose estate she holds a certain interest under his will, and which interest plaintiff has attached in this proceeding; and her interest in the real estate described in said attachment comes to her under said will;" and thereupon obtained a rule to show cause why the attachment issued against the said Eugenie M. McCaffrey and against her interest in the estate real and personal of her deceased father John Junker should not be quashed.

On the argument of this rule the following agreement, signed by the respective counsel for the plaintiff and the garnishee, was filed as of record, viz:

It is agreed and admitted by counsel for the plaintiff and for the garnishees, for the purpose of the argument and the deci·sion of these rules:

1. That Eugenie M. McCaffrey, the defendant in the foreign attachment, was a married woman on September 22, 1890, the date of the execution of the note on which the attachment is brought.

2. That she was a married woman at the time of the death of her father, John Junker, May 18, 1893, from whose estate she derives and acquires the property attached.

3. That she obtained an absolute divorce from her husband after her father's death and was unmarried at the time the said foreign attachment issued, on February 8, 1895.

The court on July 18, 1895, made absolute both the rules to quash and to dissolve the attachment, whereupon the plaintiff appealed.

*Errors assigned* were, (1) quashing the attachment; (2) dissolving the attachment.

*George P. Rich, John L. Kelly* with him, for appellant.— The ruling of the court below was wrong for two reasons:

First. She was not a married woman at the time the attachment issued, having been previously divorced from her husband.

Second  The exception in the act of 1842 is no longer in

force, since the passage of the married woman's property acts of June 3, 1887, P. L. 332, and June 8, 1893, P. L. 344 : Evans v. Cleary, 125 Pa. 204.

The act of June 3, 1887, P. L. 332, and the subsequent act of June 8, 1893, P. L. 344, known as the married woman's property acts, practically give a married woman all the powers of a femme sole, and rendered her property liable for any contracts entered into by her, either in any trade or business in which she engaged, or in the management of her separate estate, or for necessaries : Real Estate v. Roop, 132 Pa. 496 ; Latrobe v. Fritz, 152 Pa. 224 ; Koechling v. Henkel, 144 Pa. 215 ; Adams v. Gray, 154 Pa. 258.

Nor is it necessary that it should appear on the face of the record that the debt sought to be recovered from her is one that she is authorized to contract : Koechling v. Henkel, 144 Pa. 215 ; Adams v. Gray, 154 Pa. 258 ; McNeal v. McNeal, 161 Pa. 109.

It is objected, however, that under the authority of Holland v. White, 120 Pa. 228, the quashing of a writ of foreign attachment is not reviewable either on error or certiorari : Holland v. White is directly opposed to the earlier case of Steel v. Goodwin, 113 Pa. 288, in which it was held that the power of quashing writs of foreign attachment is limited to proceedings that are irregular, defective, or improper.

A motion to quash the attachment is based entirely upon the record itself, and is resorted to where it appears on the face of the record that the proceedings are irregular, defective, or improper : Crawford v. Stewart, 38 Pa. 34 ; Steel v. Goodwin, 113 Pa. 288.

The practice on dissolving foreign attachments has been assimilated by the courts to the practice in showing cause of action and discharging the defendant on common bail in a capias ad respondendum, the rule being that wherever on a capias they would order common bail they will dissolve an attachment : Vienne v. McCarty, 1 Dallas, 154 ; Miltenberger v. Lloyd, 2 Dallas, 79 ; Sergeant on Attachments, 133 ; Brightly's Troubat & Haley's Practice, sections 2271 to 2273 inclusive.

*Alex. Simpson, Jr., James L. Stanton* with him, for appellee.

—The court cannot review the action of the court below, and if it could no error existed: Holland v. White, 120 Pa. 228. The agreement filed was purely de bene esse "for the purpose of the argument and the decision of these rules," and became functus officii when the rules were decided. The mere fact of its filing no more made it a part of the record than the filing of depositions—Holland v. White, 120 Pa. 228—or of the opinion of the court—Grieb v. Kuttner, 135 Pa. 281—made them a subject of review.

The proceedings to dissolve an attachment under the act of 1869, which by the express language of Grieb v. Kuttner is analogous to this proceeding and not reviewable: Wetherald v. Shupe, 109 Pa. 389. These considerations point out how far afield we may wander if we leave the beaten path and bring us back to the case of Holland v. White, 120 Pa. 228. It should not be lost sight of in considering this question that while the court's action is invoked in the name of appeal as is directed in act of May 9, 1889, P. L. 158, yet the action of the court below is unaffected thereby: Rand v. King, 134 Pa. 641; Gates v. Pa. R. R., 154 Pa. 566; and that in this case is as if it were the common law certiorari: Parks v. Watts, 112 Pa. 4, under which the court can only determine the regularity of the record: Holland v. White, 120 Pa. 228. But if this court can review the question, the matter was rightfully decided, because the sheriff's return was inadequate to support the attachment: Act June 16, 1836, P. L. 581; Pepper & Lewis' Digest, 2161, § 15: see also Hayes v. Gillespie, 35 Pa. 155; Lambert v. Challis, 35 Pa. 156; Bryan v. Trout, 90 Pa. 492.

As to the second assignment of error that the learned court below erred in dissolving the attachment: How can this court review the action of the court below? From Miller v. Spreeher, 2 Yeates, 162, to the present time, it has constantly been held that the appellate court cannot do so, not only for the reasons set forth in Wetherald v. Shupe, 109 Pa. 389, but for the further reason that such a decision is only interlocutory: Jutte v. Conley, 4 Penny. 90; Hoppes v. Houtz, 133 Pa. 34. The conclusive presumption is that in the court below all things were rightly done: Brown v. Ridgway, 10 Pa. 42; Bain v. Funk, 61 Pa. 185.

OPINION BY RICE, P. J., January 20, 1896:

This was a foreign attachment. After service of the writ on J. Carroll McCaffrey, and on the garnishees, and after the latter had entered an appearance, two rules were entered on application of the garnishee; one a rule to show cause of action and why the attachment against Eugenie M. McCaffrey should not be dissolved; the other a rule to show cause why the attachment should not be quashed as to her. After hearing, both rules were disposed of by the brief order, " Rules absolute." The appeal is from this order. The first question is, whether the action of the court is reviewable; and, although the order we are about to make does not make it imperative to do so, it will not be out of place to consider each rule separately.

I. The court will inquire into the cause of action on foreign attachment in the same manner as on a capias where the defendant's person is taken into custody, and for similar reasons, and will proportion the bail according to the justice and extent of the plaintiff's demand, or if no sufficient cause of action be shown the court will discharge the property from the attachment. Serg. on Foreign Att. 138, etc. The well settled practice on a rule to show cause of action is for the plaintiff to read his affidavit, and if that is sufficient the attachment will be allowed to stand. Counter affidavits, tending to contradict the plaintiff, or setting up a defense to the action, are not read on the hearing of such rule, for the reason that it would tend, in practice, to a trial of the case by the court in advance. As was said in Steel v. Goodwin, 113 Pa. 288, where the attachment was quashed upon proof dehors the record that the indebtedness was not due, so it may be said here: " The right of the plaintiffs to maintain an action under all the evidence cannot be disposed of in this summary manner." The same principle has been recognized in analogous proceedings: Murdoch v. Steiner, 45 Pa. 349; Lorenz v. Orlady, 87 Pa. 226; Pleasants v. Cowden, 7 W. & S. 379; Lancaster Co. Bank v. Gross, 50 Pa. 224. On an appeal from an order dissolving an attachment on a rule to show cause of action—standing alone, and the proceedings being otherwise regular—it is to be presumed that the court based its action solely on the insufficiency of the affidavit of cause of action. On the hearing of such rule nothing else could properly enter into the adjudication, and therefore it is

to be presumed that nothing else did. It is a decision upon a question of law, which appears on the record, and is, therefore, reviewable. Grieb v. Kuttner, 135 Pa. 281, clearly decides the general principle upon which the jurisdiction of the appellate court rests, and Davis v. Tingley, 116 Pa. 113, is a case precisely in point. Upon examination of the plaintiff's affidavit we find that it sets forth a good cause of action, and for the reasons stated we would have no doubt of our jurisdiction, if this were the ordinary case of the dissolution of an attachment upon a rule to show cause of action. In answer to the suggestion that the action of the court may have been based on its examination of the law of Oregon, where the obligation in suit appears to have been made, it seems sufficient to say, that it would be none the less a decision upon a question of law. If, notwithstanding the averment in the affidavit that the contract is a valid contract under the law of Oregon, the court below might look into the law of that state and decide otherwise, so also may this court look into that law. If the law of Oregon is a pure matter of fact to be proven like other facts, then the affidavit, for present purposes, must be taken as conclusive. If, however, it is a matter which the court may determine by its own examination, its decision is upon a question of law and is reviewable. But it is unnecessary to discuss this branch of the case further. The action of the court in making the first mentioned rule absolute, whether right or wrong, becomes unimportant if the order quashing the writ must be affirmed.

II. Speaking of the power of the court to quash a writ or proceeding, Judge THOMPSON said: " Thus it appears that this remedy is defined as only applicable to irregular, defective, or improper proceedings. It would be extremely hazardous to extend it to any other cases, unless where there is a consent of parties." Crawford v. Stewart, 38 Pa. 34. It is sometimes contended that this remedy is only to be applied where it appears on the face of the writ or record of the proceeding that it is irregular, defective, or improper, and it is true that there is a distinction between quashing, and dissolving, an attachment; a distinction too frequently disregarded in practice. But it is now too well settled by precedent to permit discussion, that the court has power to quash a writ of foreign attachment upon proof of facts which are not disclosed by the

record, as, for example, that the defendant is a resident of the state, or that the property is not liable to foreign attachment: Brown v. Ridgway, 10 Pa. 42; Holland v. White, 120 Pa. 228; McElroy v. Dwight, 120 Pa. 232, note.  It seems to be equally well settled that where a court of record may quash or dissolve on extrinsic evidence which cannot be put on the record, the presumption is that everything was done rightly and according to law.  All that was brought up by writ of error or certiorari in such a case was the record, and as the evidence and the opinion of the court are no part of the record they could not be reviewed, although actually sent up with it.  The act of 1889 has not changed the law in this regard: Rand v. King, 134 Pa. 641; Com. v. Bird, 144 Pa., 194; Gates v. Penna. R. R., 154 Pa. 566.  However it may be in other cases, a thorough examination of the reports shows that this rule has been very strictly adhered to in foreign attachment whenever it has been insisted upon.  In Miller v. Spreeher, 2 Y. 162, where the court dissolved the attachment upon depositions as to the defendant's residence it was held that a writ of error would not lie.  The whole ground was covered in Brown v. Ridgway, 10 Pa. 42.  The writ having been executed the defendant moved to quash on affidavits which were filed and brought up on writ of error to the judgment quashing the writ.  The court conceded that the order was a final judgment; but said: "but then the plaintiff in error is met by another principle of equal potency, that there is no bill of exceptions to evidence on a motion for summary relief. . . . The affidavits are, therefore, not before us, and if they were, we could not judge of their truth which would be the business of a jury.  The plaintiff in error admits it, but insists that the record presents no ground for the order to quash, or rather to dissolve, which, therefore, must be taken for an act of arbitrary power.  But where a court of error (?) may quash or dissolve on extrinsic evidence, which cannot be put on the record, the presumption is that everything was done rightly and according to law."  The case of Lindsley v. Malone, 23 Pa. 24, decides that as there is no bill of exceptions to evidence on a motion for summary relief the refusal of the court to quash a writ of foreign attachment is not reviewable on writ of error, even after final judgment in the case.  In McElroy v. Dwight, 120 Pa. 232, note, the court

granted a rule to quash on an affidavit that the defendant at the beginning of the suit was in the military service of the United States. Depositions in support of the facts alleged were filed. On error to the judgment quashing the writ THOMPSON, J., said: "We cannot review the action of the court below in quashing the attachment upon a question of fact. The affidavits are no part of the record and no bill of exceptions is allowed in practice to bring them on the record." A plausible argument might be made, not absolutely without the support of analogous cases, that although the court will not look into the evidence for the purpose of revising the conclusion of the court below as to the weight thereof, yet it might do so in order to ascertain the ground of the action. (See Jackson v. Morter, 82 Pa. 291; Connelly v. Phila., 86 Pa. 110.) But as to this, Justice THOMPSON said: "We do not desire to be understood as expressing an opinion on the ground taken below for quashing the writ, as that is not before us." In Holland v. White, 120 Pa. 228, the plaintiff took both a writ of error and a certiorari to the judgment of the court quashing the writ. After showing that the affidavits and the depositions on which the order was made were no part of the record, and that there was no method for excepting to their admission by bill so as to get them upon the record, the court held further that the motion like one to set aside the service, or to amend a return, or to set aside a verdict is addressed to the discretion of the court, and the exercise of that discretion is not reviewable on a writ of error. In disposing of the certiorari, Justice WILLIAMS said: "If the evidence could be treated as properly before us, still we could not consider the assignments of error, for the evidence was received by the court in a matter resting entirely in its discretion. . . . As was said by GIBSON, J., in the Union Canal Co. v. Keiser, 19 Pa. 137, motions addressed 'to the discretion of a judge are determinable by him exclusively, for we would be incompetent to judge how far he ought to have believed the witnesses.'" In Steel v. Goodwin, 113 Pa. 288, the court on error reversed the order of the court below quashing the writ. It is to be observed, however, that the order was made upon the application of an assignee for benefit of creditors under a deed executed in New York, but which was not recorded in this state until after the service of

the attachment, and that he was not a party to the record. It would, perhaps, be unfair to say that the decision was put upon the ground that an assignee for benefit of creditors could not make the motion. It is evident that the court did look into the affidavits for the purpose of ascertaining the grounds of the motion, and decided that they were insufficient in law. But it does not appear that the question as to the power of the court to review the action of the court below was raised. It is not an authority upon that question which overturns the earlier and later decisions.

There is nothing said or decided in Grieb v. Kuttner, 135 Pa. 281, which overrules anything that was decided in Holland v. White. It does however suggest a distinction which was not necessary to consider in any of the preceding cases, but which we are required to consider in this case.

The record shows that an agreement as to certain facts was filed. It reads as follows: "It is agreed and admitted by counsel for the plaintiff and for the garnishees, for the purpose of argument and the decision of these rules," etc.

The questions are, whether the facts thus agreed upon became a part of the record and can be considered by this court; whether the decision of the court below as to the question of law arising out of these facts is reviewable; and whether, if reviewable, the court erred in quashing the writ.

With regard to the appellate jurisdiction of the Supreme Court it was said in Gosline v. Place, 32 Pa. 520: "The judicial authority of the court extends to the review and correction of all proceedings of all inferior courts except where such review is expressly excluded by statute." "That it is not to be taken away except by express terms or irresistible implication has been declared in many cases." WOODWARD, J., in Chase v. Miller, 41 Pa. 403, citing Burginhofen v. Martin, 3 Y., 479; Overseers v. Smith, 2 S. & R., 363; Com. v. Beaumont, 4 R. 366; Com. v. McGinnis, 2 Wh. 113. An order quashing a foreign attachment is undoubtedly a final disposition of the action commenced by this process: Brown v. Ridgway, 10 Pa. 42; Giddings' Appeal, 81* Pa. 72. Generally speaking a writ of error lies in all cases in which a court of record has given a final judgment or made an award in the nature of a final judgment. Hence it was held that an order quashing an attach-

ment execution was the subject of a writ of error. " It is a high power to set aside the process of the law. Such a decree is final and reviewable on error." Pontius v. Nesbit, 40 Pa. 309. So also an order quashing an attachment under the act of 1869 may be reviewed on error—Sharpless v. Zeigler, 92 Pa. 467; Biddle v. Black, 99 Pa. 381,—the reason being that it is equivalent to a final judgment. Cases might be multiplied, but it is unnecessary. When therefore it is said that an order quashing a writ of foreign attachment on extrinsic evidence is not reviewable on writ of error or certiorari, we do not understand it to be meant that the judgment of the court is conclusive and that such writ will not lie to it, as in the case where by statute the decision of the common pleas upon certiorari to justices of the peace is made final and conclusive. It is meant simply that the appellate court will not review the decision of the court upon questions of fact; because the writ brings up nothing but what appears upon the record, and the evidence is not part of the record; and also because if the evidence were brought up it would not be the province of the reviewing court to pass upon the credibility of the witnesses or to decide as to the weight of the testimony. But where neither of these obstacles exists, where no question as to the competency or credibility of the witnesses or as to the weight of the testimony is involved, where all of the facts are agreed upon and are made part of the record, and the question thus presented is purely one of law, it would be very strange if the action of the court in entering a judgment which ends the action and puts the plaintiff out of court were not reviewable.

But here arises the difficulty. As has been seen, the affidavits and depositions read on the hearing of such a rule are not part of the record, and hence the appellate court, which cannot look beyond the record, cannot consider them for any purpose. Nor is an agreement of counsel as to the facts, manifestly made to take the place of depositions, a part of the record, although filed. Not every paper that is filed, although filed by order of the judge, is a part of the record, for purpose of review. Anderson v. Oliver, 138 Pa. 156. It will be seen upon careful examination of Chase v. Miller, 41 Pa. 403, which was a certiorari to the quarter sessions in a contested election case, that the facts were agreed upon and put upon the record by the

concurrent consent of court, counsel and parties, and that the decree showed that it was made " upon the written statement of facts agreed to by the parties and filed . . . . no other evidence being offered." That something more is necessary than the mere agreement of the parties or their counsel to bring extrinsic facts upon the record is clearly shown in the opinion of Judge WOODWARD (p. 415). " A bill of exceptions compels. the facts upon the record. Neither the court nor the adverse party can resist it, but the parties cannot be compelled to agree, nor the court to order their agreement to record. Still both may be done, and thus the purpose of a bill of exceptions fully attained." Here it does not appear by the record that the facts agreed upon were admitted to the record by the consent of the court, or that they were the only facts which were before the court.

After a very patient examination of the question we feel constrained to say that there is no error in the record; and that, whether the decision of the court upon the facts was erroneous, is a question which is not before us.

Judgment affirmed.